**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> USG CORPORATION, JOSE ARMARIO, THOMAS A. BURKE, MATTHEW CARTER, JR., GRETCHEN R. HAGGERTY, WILLIAM H. HERNANDEZ, BRIAN A. KENNEY, RICHARD P. LAVIN, STEVEN F. LEER, and JENNIFER F. SCANLON, <br><br> Defendants. | Civil Action No. _____ <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 11, 2018 (the "Proposed Transaction"), pursuant to which USG Corporation ("USG" or the "Company") will be acquired by Gebr. Knauf KG ("Parent") and its indirect wholly-owned subsidiary, World Cup Acquisition Corporation ("Merger Sub" and together with Parent, "Knauf").

2. On June 10, 2018, USG's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Knauf. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by USG's shareholders and completed, USG's stockholders will receive

$43.50 in cash for each share of USG common stock they own, plus a conditional special cash dividend of $0.50 per share if the Proposed Transaction is approved by USG's stockholders at the special stockholder meeting, which is currently scheduled to take place on September 26, 2018.

3. On August 23, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of USG common stock.

9. Defendant USG is a Delaware corporation and maintains its principal executive offices at 550 West Adams Street, Chicago, Illinois 60661. USG's common stock is traded on the NYSE under the ticker symbol "USG." USG is a party to the Merger Agreement.

10. Defendant Jose Armario ("Armario") is a director of USG.

11. Defendant Thomas A. Burke ("Burke") is a director of USG.

12. Defendant Matthew Carter, Jr. ("Carter") is a director of USG.

13. Defendant Gretchen R. Haggerty ("Haggerty") is a director of USG.

14. Defendant William H. Hernandez ("Hernandez") is a director of USG.

15. Defendant Brian A. Kenney ("Kenney") is a director of USG.

16. Defendant Richard P. Lavin ("Lavin") is a director of USG.

17. Defendant Steven F. Leer ("Leer") is the Chairman of the Board of USG.

18. Defendant Jennifer F. Scanlon ("Scanlon") is the Chief Executive Officer ("CEO"), President, and a director of USG.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of USG (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of June 7, 2018, there were 139,462,508 shares of USG common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

27. USG, through its subsidiaries and joint ventures, is a leading manufacturer of building materials and innovative solutions that was originally formed in 1902. USG produces a wide range of products for use in new residential, new nonresidential, and residential and nonresidential repair and remodel construction, as well as products used in certain industrial

4

processes. The Company serves construction markets around the world through its Gypsum, Performance Materials, Ceilings, and USG Boral divisions.

28. In 2014, USG entered into a joint venture with USG Boral Building Products Pte Limited and USG Boral Building Products Pty Limited (the "UBBP joint venture"). The UBBP joint venture has been a leading plasterboard and ceilings producer across Asia, Australasia, and the Middle East.

29. On June 10, 2018, USG's Board caused the Company to enter into the Merger Agreement with Knauf.

30. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by USG's shareholders and completed, USG's stockholders will receive $43.50 in cash for each share of USG common stock they own, plus a conditional special cash dividend of $0.50 per share if the Proposed Transaction is approved by USG's stockholders at the special stockholder meeting, which is currently scheduled to take place on September 26, 2018.

31. In connection with the Proposed Transaction, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation in the merger and an indirect, wholly-owned subsidiary of Parent.

32. According to the press release announcing the Proposed Transaction:

> Gebr. Knauf KG ("Knauf") and USG Corporation (NYSE:USG) ("USG") today announced that they have entered into a definitive agreement pursuant to which Knauf will acquire all of the outstanding shares of USG in a transaction valued at approximately $7.0 billion. Under the terms of the agreement, USG shareholders will receive $44.00 per share, which consists of $43.50 per share in cash payable upon closing of the transaction and a $0.50 per share special dividend that would be paid following shareholder approval of the transaction. The price represents a premium of 31% to USG's unaffected closing price of $33.51 and a 36% premium to the $32.36 average closing price for the preceding 12-month period, both as of March 23, 2018, and a

5

multiple of approximately 11.6x USG's adjusted EBITDA for the 12 months ended March 31, 2018. The transaction was unanimously approved by USG's Board of Directors. Berkshire Hathaway has agreed to vote its shares in favor of the transaction. As of June 11, 2018, Berkshire Hathaway and its subsidiaries owns approximately 31% of the issued and outstanding shares of USG.

The combined company results in a global building materials industry leader that will maximize Knauf and USG's highly complementary businesses, products and global footprint to better meet the needs of both companies' end-market customers. Following the close of the transaction, USG will continue to be managed locally in the United States, and Knauf intends to maintain USG's existing corporate headquarters in Chicago as well as its facilities in North America. . . .

The transaction is expected to close in early 2019, subject to customary closing conditions, including regulatory approvals and approval by USG shareholders.

The transaction is not subject to any financing conditions. The transaction will be financed from existing cash and committed debt financing.

### *The Proxy Statement Omits Material Information, Rendering It False and Misleading*

33. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

34. The Proxy Statement omits material information regarding the Company's financial projections, as well as the valuation analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman") and J.P. Morgan Securities LLC ("J.P. Morgan").

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness

6

of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. Defendants failed to disclose certain financial projections of USG, despite the fact that Goldman and J.P. Morgan were provided with, and relied upon, those projections to perform their valuation analyses to support their respective "fairness opinions." In particular, according to the Proxy Statement, in performing their discounted cash flow analyses, Goldman and J.P. Morgan relied upon the Company's projections of: (i) "unlevered free cash flows" for years 2018 through 2022 for (a) the Company, excluding the Company's ownership stake in the UBBP joint venture and excluding the value of USG's net operating losses ("NOLs") and other tax attributes ("USG NA"); and (b) the UBBP joint venture; and (ii) USG's NOLs.

37. The Proxy Statement, however, misleadingly discloses only the Company's projections of "Free Cash Flow (pre-Tax)." Defendants therefore failed to, but must, disclose the Company's projections of "unlevered free cash flows" for years 2018 through 2022 for USG NA and the UBBP joint venture, as well as the Company's projections of NOLs. This information is material to USG stockholders, who are faced with a decision of whether to approve the Proposed Transaction and receive cash for their shares, or reject the Proposed Transaction and remain stockholders in the standalone USG. Moreover, stockholders are being misled into believing that the projections that were disclosed in the Proxy Statement were the projections used by Goldman and J.P. Morgan in their discounted cash flow analyses. That is incorrect. Accordingly, without this information, stockholders are being misled into believing that the merger consideration is fair.

7

38. Relatedly, in the Proxy Statement, defendants disclosed USG's projections of certain non-GAAP (generally accepted accounting principles) financial measures, including Adjusted Operating Profit, Adjusted EBITDA, and Free Cash Flow (pre-Tax), but defendants failed to provide stockholders with the necessary line item projections for the metrics used to calculate USG's non-GAAP metrics or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that: "The Company Projections include 'non-GAAP financial measures,' which should not be viewed as a substitute for, or superior to, U.S. GAAP financial measures and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude items, including charges and credits, that are required to be included in a U.S. GAAP presentation." As such, USG's stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

40. Defendants failed to disclose a fair summary of Goldman's Selected Companies Analysis in the Proxy Statement. Specifically, defendants only disclosed the five companies that Goldman compared to the Company and their respective 2018 and 2019 enterprise value-to-EBITDA ("EV/EBITDA") multiples, but defendants failed to disclose USG's estimated 2018 and 2019 EV/EBITDA multiples to which Goldman compared with the selected "comparable"

companies. Accordingly, notwithstanding the implication that Goldman's analysis supports the fairness of the merger consideration, stockholders have no basis to understand whether Goldman's analysis actually supports the fairness or unfairness of the merger consideration.

41. Further, the omission of this information is material and misleading because Goldman did not perform a typical comparable company analysis by selecting a range of trading multiples based on the selected companies, and then applying the selected trading multiples to the target's relevant financial statistics to generate implied values of the target company (as J.P. Morgan did in its comparable companies analysis, and Goldman and J.P. Morgan did in their precedent transactions analyses). Instead, Goldman apparently only compared the 2018 and 2019 EV/EBITDA multiples of the selected companies to USG's (undisclosed) multiples, thus defeating the purpose of the analysis. The failure to disclose the Company's 2018 and 2019 EV/EBITDA multiples therefore was a material omission and renders the Proxy Statement materially misleading by wrongly implying that Goldman's analysis supports the fairness of the merger consideration.

42. With respect to each of Goldman's and J.P. Morgan's discounted cash flow analyses, the Proxy Statement fails to disclose: (i) the unlevered free cash flows for years 2018 through 2022 for USG NA and the UBBP joint venture, and the line items used to calculate those unlevered free cash flows; (ii) the Company's projections of NOLs; and (iii) the specific numerical inputs and assumptions underlying the discount rates selected and applied in Goldman's and J.P. Morgan's analyses of USG NA, the UBBP joint venture, and USG's NOLs.

43. The failure to disclose this information causes the Proxy Statement to be misleading in that it makes the merger consideration appear fair. The omission of this information is material and causes the Proxy Statement to be misleading because stockholders

are being asked to rely on Goldman's and J.P. Morgan's analyses without being provided with sufficient information regarding the key inputs used in the analyses. Without this information, USG's stockholders cannot assess the reliability of the analysis for themselves. This information is particularly important here because stockholders are being asked to accept the cash merger consideration in exchange for their interest in the Company's future prospects.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) Certain USG Unaudited Prospective Financial Information; and (ii) Opinions of the Company's Financial Advisors.

45. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and USG

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. USG is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of USG within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of USG and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder; and

  E. Awarding the plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: August 31, 2018    Respectfully Submitted,

By: */s/ Bruce C. Howard*
Bruce C. Howard
*bhoward@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: (312) 236-0000
Fax: (311) 754-9616

Aaron Brody
*abrody@ssbny.com*
(*pro hac vice to be submitted*)
**STULL, STULL, & BRODY**
6 East 45th Street
New York, NY 10017
Phone: (212) 687-7230
Fax: (212) 490-2022

*Attorneys for Plaintiff*

## PLAINTIFF CERTIFICATION

I, __Robert Lowinger__ ("Plaintiff") hereby state:
[Printed Name]

1. Plaintiff has reviewed the complaint and has authorized the filing of the complaint on his behalf.

2. Plaintiff did not purchase any USG Corporation ("USG" or the "Company") securities at the direction of his counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a lead plaintiff and/or representative party on behalf of a class, including providing testimony at deposition and trial if necessary. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Plaintiff Certification. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf other class members in directing the action.

4. Plaintiff currently owns, and has held __100__ shares of USG at all times relevant hereto.

5. Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years unless otherwise stated in the space below:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rata share of any recovery, or as ordered or approved by the court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this __30th__ day of __August__, 2018

_____
Signature